# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In Re:

|  |  |
|---|---|
| **MEGAN P. THOMAS** *Debtor* | Chapter 13 |
|  | Case No. 1:15-bk-00825-RNO |

---------------------------------------------------

|  |  |
|---|---|
| **CHRISTOPHER W. SPAGNOLA** **NATALIE SPAGNOLA** *Movants/Purchasers* | Chief Judge Robert N. Opel II |
| **v.** |  |
| **M&T BANK,** **MEGAN P. THOMAS,** **YORK COUNTY TAX CLAIM BUREAU,** **KERRY PAE AND KERRY PAE AUCTIONEERS,** **CHARLES J. DEHART, III, ESQUIRE, CHAPTER 13 TRUSTEE,** *Respondents* | 11 U.S.C. § 363 |

## BRIEF IN SUPPORT OF MOVANTS'/PURCHASERS' MOTION TO APPROVE AND COMPEL SALE OF REAL ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES UNDER 11 U.S.C. § 363

AND NOW, this 10th day of November, 2017, come the Movants and

Purchasers, Christopher W. Spagnola and Natalie Spagnola, by and through

counsel, the CGA Law Firm, P.C., Haley Rohrbaugh, Esquire, and do file the

{01382080/1} 1

within Brief in support of their Motion to Approve and Compel Sale of Real Estate Free and Clear of Liens and Encumbrances pursuant to 11 U.S.C. § 363 as follows:

## PROCEDURAL HISTORY

The within case was filed as a voluntary Chapter 13 Bankruptcy on March 2, 2015. On October 21, 2015, an Order was entered confirming the Debtor's Chapter 13 Plan, as amended. *See* Order Confirming Plan, Doc. 62.

The Confirmed Plan filed on August 26, 2015, Section B1, orders that in addition to Plan payments, the Debtor shall dedicate to the Plan proceeds from the sale 3414 Trone Road, Glennville, Pennsylvania, 17329 ("***Property***" or "***3414 Trone Road***"). *See* Confirmed Plan, Doc. 50. Section G of the Confirmed Plan avoids judicial liens of M&T Bank from encumbering 3414 Trone Road.

M&T Bank's mortgage on the Property is provided for in Section 2D, page 4, of the Confirmed Plan, which is reserved only for "**Secured Claims Paid According to Modified Terms**" and states that:

> ***The excess of the creditor's claim** will be treated as an **unsecured claim** . . . **THE LIENS WILL BE AVOIDED OR LIMITED THROUGH THE PLAN**. . .*

(emphasis added). Section 2D, page 4, orders that the lien of M&T Bank is avoided or limited by the Confirmed Plan itself, and no Adversary Action would be necessary to determine the extent of its lien. A Rider attached and incorporated into the Confirmed Plan ("***Rider***") which orders the following:

M&T Bank shall be paid *up to* the full amount of its allowed secured claim from the sale of the parcels of real property at 3414 Trone Road . . .. If . . . Trone Road . . . [is] not under an agreement of sale by January 31, 2016, the Debtor will cause any such property not under an agreement of sale by such date to be auctioned thereafter.

An application to employ the auctioneer was filed on March 21, 2016 by Debtor's Counsel. *See* Doc 75. The Auction contract attached to that application is titled: **ABSOLUTE REAL ESTATE CONTRACT** and states the following:

"2.    Seller hereby employs Kerry Pae Auctioneers[1] to sell said property [at] ***Absolute Auction*** . . . to the highest bidder ***without limit, favor, or reserve.***"

(emphasis added). M&T Bank failed to object to the Application to Employ Kerry Pae Auctioneers as Auctioneer, and the contract terms entered into between Debtor and Auctioneer, which clearly establish that the auction will be an "Absolute Auction" and that there is no reserve[2].

On November 12, 2016 at 11:00 AM, twenty (20) months after the filing of the case and thirteen (13) months after confirmation of the Plan, an auction was held on the Property, 3414 Trone Road ("***Auction***"), pursuant to both the Order Confirming Plan and the Order Approving the Auction.

Prior to the Auction, flyers were circulated advertising an "Outstanding Court Ordered Absolute Auction!" and an open house scheduled for Wednesday,

---

[1] Kerry Pae and Kerry Pae Auctioneers hereinafter referred to as "Auctioneer".
[2] At the evidentiary hearing held on September 7, 2017, the Auctioneer testified that Debtor's Counsel specifically requested the Absolute Auction Contract.

November 2, 2016. *See* Exhibits D and E to Motion for Sale, Doc. 107. The flyers omit any information about the Bankruptcy.

At the evidentiary hearing held on September 7, 2017, the Auctioneer, the Auctioneer's associate, Ryan Groff, the highest bidder, Movant/Purchaser, Christopher Spagnola, and a disinterested bidder, Bill Adams, all testified to the accuracy and verified the circulation of all of the advertisements by Auctioneer presented as Exhibits C through F of the original Motion for Sale, Doc. 107.

Debtor's Counsel produced a letter dated November 3, 2016, only nine-days prior to the Auction, which was allegedly sent via electronic mail that same day to Kerry Pae of Kerry Pae Auctioneers (collectively referred to as the "*Auctioneer*") stating that a condition of the Auction should be a reserve of $400,000.00. However, on Friday, November 4, 2016, the day after the letter was e-mailed to the Auctioneer ordering a reserve, there was an advertisement in the York Daily Record titled "COURT ORDERED ABSOLUTE AUCTION" with an address of 3414 Trone Road, Glenville, PA 17329. The terms of the auction listed in the newspaper advertisement omit any information regarding any type of reserve, regarding the Bankruptcy, or regarding any indication that there was the possibility that the auction's results would not be final. A true and correct copy of the ad is attached as Exhibit "C" to the original § 363 Motion.

A sign advertising the auction of the Property was displayed on the Property and labeled "ABSOLUTE AUCTION" listing the same date and time as the Auction scheduled for the Property. At the hearing held on September 7, 2017, the Auctioneer's Associate, Ryan Groff of Lane Ryan Auctions, who set up the equipment for the auction, testified and confirmed that the sign labeled "ABSOLUTE AUCTION" was still conspicuously displayed by the road at the entrance to the property on the day of the Auction as bidders were arriving and preparing to bid.

Finally, the Terms of Sale attached to the auction numbers provided for the bidders' use on the day of the Auction states that "[a]ll sales are final" and omits any information about the within Bankruptcy, or a reserve, or the necessity of further approval of the creditor. *See* Exhibit C to Motion for Sale.

The Purchasers were the highest bidders at the Auction with an offer of $255,000.00 which was accepted when the hammer fell and the auction concluded. Purchasers produced a witness and disinterested losing bidder, Willhelm "Bill" Adams, at the evidentiary hearing held on September 7, 2017. Bill testified that the Auctioneer specifically reiterated that it was an Absolute Auction by announcement prior to the initiation of the bidding. He also testified that the Auctioneer boasted about the nature of the Absolute Auction and how it is the best way to buy real estate as there is no reserve or minimum bid amount.

M&T Bank did not attend the auction. There was also no representative of M&T Bank in attendance at the Auction. M&T Bank did not place a credit bid at the Auction. Debtor's Counsel produced a letter dated November 3, 2016 which was e-mailed to M&T Bank via electronic mail that same day. In the November 3rd letter, Counsel for Debtor suggests to Counsel for M&T Bank that it should attend and place a credit bid.

The Debtor also declined to attend the auction. There was also no representative of the Debtor in attendance at the Auction. The Debtor did not withdraw the property from sale prior to the initiation of the bidding or the conclusion of the auction.

The Purchasers complied with all of the Terms of the Sale and tendered the required down payment. The Purchasers contracted when they submitted their highest bid, which offer was accepted by the fall of the hammer since it was an Absolute Auction. The Purchasers memorialized that contract when they entered into the Agreement of Sale ("*Agreement*"). *See* Exhibit "H", Doc. 107.

After the Purchasers had both reviewed and executed the Agreement, the Purchasers handed the executed Agreement back to the Auctioneer, who *then* handwrote "paragraph 6A" which states, "This agreement is subject to final approval by U.S. Middle District Bankruptcy Court."

At the September 7, 2017 hearing, Mr. Spagnola testified that the Agreement was a carbon copy, which the Auctioneer had previously removed from the original Sale Agreement after it was executed. He testified that he rolled his copy up and placed it under his arm. The Auctioneer then requested to see it again, took back the carbon copy, slid it under the original, and added paragraph 6A described above. Paragraph 6 itself is merely a provision dealing with personalty and fixtures being sold along with the Property. This "6A" provision would have been more appropriate if it were added to the Agreement and read aloud prior to the Auction, and if it were located under paragraph 3 which states that "[t]itle to said property shall be free and clear of all liens and encumbrances."

When the Purchasers questioned the Auctioneer, having expected this to be an Absolute Auction, the Auctioneer reassured the Purchasers that Bankruptcy Court approval was simply a technicality, that there would be no issue, and that it would only take forty-five (45) days to obtain a Court Order Approving the Sale. The Auctioneer made that statement after receiving actual notice[3] of the within Bankruptcy and of the request for the reserve. Paragraph 4 of the Agreement reads as follows:

> In all instances, time shall be of the essence of this agreement, unless extended by mutual consent of the parties in writing.

---

[3] *See* Letter from Debtor's Counsel to M&T Bank dated November 3, 2017.

However, the Purchasers' down payment was eventually returned with no Court Order and to date, nearly a year after the Auction, the Purchasers are still without an answer as to whether they will be able to move in to their future home and begin the necessary repairs as a result of the Property sitting vacant for all of this time.

Counsel for Movants/Purchasers contacted Counsel for the Debtor seeking a Motion for Sale pursuant to 11 U.S.C. § 363, the Confirmed Plan, and the Order Approving the Auction. Movants/Purchasers had two other Attorneys attempt to move Debtor's Counsel to file the Motion, to no avail. Therefore, the within Motion was filed by the Purchasers, and significant fees have been incurred by the Purchasers in their pursuit of an Order Approving the Sale; fees which should have been incurred by the Debtor in the normal course of her Bankruptcy proceeding.

The pursuit of the Order Approving the Sale has involved the exchange of several pleadings, collecting and exchanging evidence, including a nearly all-day evidentiary hearing held on September 7, 2017, in front of the Honorable Chief Judge Robert N. Opel II. At the conclusion of the evidentiary hearing, Counsel for the Debtor and the Auctioneer, and Counsel for M&T Bank, were ordered to file Briefs in Opposition of the Motion for Sale by the September 30, 2017 deadline. While those Briefs were not filed by the September 30th deadline, and still to this date are not filed, Purchasers wish to set forth their legal arguments as to why the sale should be granted.

## STATEMENT OF QUESTIONS INVOLVED

**I.** **Did M&T Bank forfeit its opportunity to ensure that its claim would be paid in full when it failed to object to the Motion to Employ the Auctioneer, when it failed to object to the confirmation of the Confirmed Plan, when it failed to object during the Adversary Complaint and the Order approving the sale of the Property, and when it failed to appear at the Auction to place a credit bid?**

**Suggested Answer: Yes.**

**II.** **Did the conduct of the Auctioneer leading up to the Auction render it an Absolute Auction, and not one subject to Bank Approval, Debtor Approval, or Court Approval?**

**Suggested Answer: Yes.**

**III.** **Did the conduct of the Debtor and Debtor's Counsel in refusing to file the required Sale Motion violate the requirements of 11 U.S.C. § 363 as well as the law of the case?**

**Suggested Answer: Yes.**

**IV.** **Are the Movants Good Faith Purchasers as required by 11 U.S.C. § 363(m), and is the sale to Purchasers at the price of their highest bid in the best interests of the Bankruptcy Estate?**

**Suggested Answer: Yes.**

## ARGUMENT

**I. M&T Bank forfeited its opportunity to ensure that its claim would be paid in full when it failed to object to the Motion to Employ the Auctioneer, when it failed to object to the confirmation of the Confirmed Plan, when it failed to object during the Adversary Complaint and prior to the entry of the Order approving the sale of the Property, and when it failed to appear at the Auction to place a credit bid.**

A fundamental aspect of due process in any proceeding is to afford every party notice, reasonably calculated, under all of the circumstances, to apprise every party of an intended action and to afford every party an opportunity to present any objections or opposition. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); In re Velardi, 547 B.R. 147, 153 (Bankr. M.D. Pa. 2016)(citations omitted). M&T Bank has already had several opportunities to present any objections or opposition and it has failed to timely do so. M&T Bank's receipt of Notice of the Auction date prior to the Auction is significant to the outcome of the within proceeding. Pursuant to 11 U.S.C. § 363(k), at a sale of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise, the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

Similarly, in the instant matter, there was a sale of the real property (3414 Trone Road), which was subject to a lien of M&T Bank. M&T Bank received

Notice of the Auction prior to the Auction. M&T Bank decided not to attend the auction or place a credit bid.

The opportunity to place a credit bid is specifically provided by Congress to secured creditors to help preserve secured claims. "The purpose of § 363(k) is to give a secured creditor protections against attempts to sell its collateral for an inadequate or depressed price." § 15:16.Credit bidding rights of secured creditors, 2 Bankruptcy Law Manual § 15:16 (5th ed.). However, if the creditor fails to take advantage of their rights under § 363(k), once the bidding has closed on an "Absolute Auction," that creditor has waived its § 363(k) rights and must accept the highest bid. A secured creditor will waive the right to credit bid if it does not assert the right by the time of the sale hearing. See, e.g., In re Netfax, Inc., 335 B.R. 85 (D. Md. 2005) (bankruptcy court did not abuse its discretion in refusing to consider secured creditor's credit bid which was not made until after sale hearing). See also In re R.L. Adkins Corp., 784 F.3d 978, 60 Bankr. Ct. Dec. (CRR) 249 (5th Cir. 2015) (creditor did not object to confirmation of plan, did not appear at the hearing on confirmation, and never sought to credit bid its claim, thus could not make election to have its claim treated as fully secured.)

M&T Bank also had Notice that the contract entered into between Debtor and the Auctioneer was for an "Absolute Auction" without reserve, and M&T Bank failed to object.

Our circuit has recognized the importance of the finality of judicial sales. In re Stanley Engineering Corporation, 164 F.2d 316 (3rd Cir. 1947), Jacobsohn v. Larkey, 245 F. 538, 541 (3rd Cir. 1917). "Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates." In re Karpe, 84 B.R. 926, 932–33 (Bankr. M.D. Pa. 1988). "Public policy requires stability in such sales . . . they are not to be disturbed except for substantial reasons." Id.

Our Court has also recognized that it is important that the bidder receive what he had reason to expect, and that nothing impair the public's confidence in the regularity of judicial sales. In re Gil–Bern Industries, Inc., 526 F.2d 627, 629 (1st Cir.1975), quoted by In re Karpe, Id. at 932 (Bankr. M.D. Pa. 1988). Finality and regularity of proceedings are significant factors whenever the courts are involved in a sale of property, for devotion to those principles encourages fervent bidding and ensures that interested parties will sincerely extend their best and highest offers at the auction itself. In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998). The Court in In re Edwards goes on to say:

> The concern the emphasis on finality is intended to serve, encouraging confidence in judicial sales, is satisfied so long as members of the public are treated in an anticipated manner. **Thus, employing a sliding scale approach, the importance of estate enhancement <u>diminishes</u> as an auction participant's reasonable expectations, and the gravity of finality, increase.**

(emphasis added). Id. at 562 (Bankr. E.D. Pa. 1998).

Finally, The United States Supreme Court has found that an Order confirming a Chapter 13 Plan is a final Order, the terms of which are enforceable even if the Plan provisions are unlawful, because the creditor actually received notice of the filing and contents of the Plan which more than satisfied the creditors' due process rights. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 275 (2010).

Similar to the creditor in Espinosa, M&T Bank filed a proof of claim regarding the mortgage on the Property, thereby submitting itself to the Bankruptcy Court's jurisdiction with respect to that claim. Id. (quoting Langenkamp v. Culp, 498 U.S. 42, 44, 111 S.Ct. 330 (1990) (per curiam).) Also similar to the creditor in Espinosa, M&T Bank had actual notice of the filing of Debtor's Plan, its contents, and the Bankruptcy Court's subsequent confirmation of the Plan. Id.

The auction participants, including Purchasers, had the reasonable expectation that this was a final, Court Ordered Absolute Auction with no reserve, as a result of the advertising of the Auction leading up to the day of the sale, as well as the conduct of the Auctioneer the day of the sale. As such, the Purchasers, and other bidders, were without notice that this sale was anything but absolute and final. On a sliding scale, approach as set forth in In re Edwards, under the circumstances, the importance of obtaining full payment of M&T Bank's claim has

completely diminished in light of the auction participants' reasonable expectations and the gravity and importance of the finality of judicial sales, and in light of M&T Bank's failure to protect its full claim.

## II. The conduct of the Auctioneer leading up to the Auction rendered it an Absolute Auction, and not one subject to Bank Approval, Debtor Approval, or Court Approval.

If a bidder receives an auction catalogue containing the conditions of sale, he or she is responsible for the contents, despite not reading the document. Hessel v. Christie's Inc., 399 F. Supp. 2d 506 (S.D. N.Y. 2005); 7 Am. Jur. 2d Auctions and Auctioneers § 14. The same should be said for the conditions of sale presented by the Auctioneer – the Auctioneer is also responsible for the contents. In the instant matter, Movants/Purchasers received their bidding number including the "Terms of Sale" as described above and as presented at the evidentiary hearing, which terms and conditions stated that "[a]ll sales are final" and omits any information about the within Bankruptcy, or a reserve, or the necessity of further approval of the creditor. The Auctioneer, his associate, and two bidders present at the Auction all confirmed under oath that the Terms of Sale on the bidding number were in fact those which were given to the bidders on the day of the Auction.

Thus, the advertisement containing a description of the property and other relevant terms of sale, along with the purchaser's bid presented in written form, constitute the parties' contract and neither the purchaser nor the vendor may

unilaterally introduce new terms into the agreement after the contract is established absent additional consideration for such modification.  Ley Industries, Inc. v. Charleston Auctioneers, 77 Ohio App. 3d 727, 603 N.E.2d 1037 (3d Dist. Van Wert County 1991). 7 Am. Jur. 2d Auctions and Auctioneers § 14.

However, the contract was established before the actual Agreement was signed. In "absolute auction," or auction held "without reserve," mutual contingent assent is achieved when offer is made, and each bid made is mutual assent between seller and respective bidder, contingent only on no higher bid being received; as each high bid is made, the previous contract is extinguished and new contract based on mutual contingent assent comes into being, and at the point when no further bids are made, the contingency in last bid made is extinguished and a final contract in a series of contingent contracts is established. Pyles v. Goller, 109 Md. App. 71, 674 A.2d 35 (1996). Acceptance at auction is commonly signified by the fall of the hammer or by the auctioneer's announcement "Sold," after which the sale is consummated and neither party can withdraw. Udall v. T.D. Escrow Servs., Inc., 159 Wash. 2d 903, 154 P.3d 882 (2007).

As a result, without additional consideration, the Auctioneer was not legally able to change the nature of the sale and add the provision contained in Paragraph 6A into the Agreement after the fall of the hammer and after the Agreement was already signed. The parties may not, now, withdraw from the contract.

**III.** **The conduct of Debtor and Debtor's Counsel in refusing to file the required Sale Motion violate the requirements of 11 U.S.C. § 363, as well as the law of the case.**

In a typical § 363 sale procedure under these circumstances, Debtor would be responsible for the filing of the Motion to obtain an Order Approving the Sale. In that case, Purchasers would not have had any role in the drafting of Bankruptcy Motions to approve their highest bid, and would not have had to incur Counsel fees to preserve their interest in the Property. However, Purchasers were forced to hire counsel to effectuate the sale of the Property. To be made whole, Purchasers should be awarded Counsel fees to be paid at closing out of the sale price. In the alternative, cause exists for the Auctioneer's fees, as well as Debtor's Counsel's fees, to be disgorged or bifurcated to cover Purchasers' Counsel fees.

It does appear Debtor's counsel and the Auctioneer expended time and effort in an attempt to cause the sale. Debtor's Counsel and Auctioneer:

      a.      entered into a contract that is titled "Absolute Real Estate Contract" and is placed on Kerry Pae Auctioneers' letterhead which states that the sale of 3414 Trone Road is by "Absolute Auction . . . to the highest bidder without limit, favor, or reserve";

      b.      obtained Court approval of those contract terms;

c.      advertised the auction as "Court Ordered" and an "Absolute Auction" via (1) the newspaper, (2) flyers circulated, (3) signs placed along the road, and (4) final terms on the back of the auction number the day of the sale (all of which can be found in Exhibits C through G of Purchasers' original § 363 Motion);

d.      announced prior to the Auction that it was a great deal for being an "Absolute Auction"; and

e.      entered into a sale agreement with the Purchasers.

However, Debtor's counsel and Auctioneer failed to complete the final step in the sale process by filing a § 363 Sale Motion. As such, those fees and expenses incurred by Purchasers in the filing of the § 363 Sale Motion should either be paid from the sale price, or Debtor's Counsel's fees and the Auctioneer's fees should be bifurcated or disgorged, also for the reason set forth in Paragraph 23 below. The purpose of the disgorgement or bifurcation would be so that M&T Bank is able to obtain maximum recovery from the $255,000.00 sale price.

In an "Absolute Auction" when the auction is without reserve:

a seller may cancel the auction, modify the terms of the auction, or withdraw his or her property *before* any bidding begins. The owner of the property may not, however, withdraw it from the sale once any legitimate bid has been submitted. Accordingly, the owner may be liable for withdrawal of the property from the sale after a bid.

(citations omitted) 7A C.J.S. Auctions and Auctioneers § 29. In <u>Pillsbury</u>, the Pennsylvania Court stated:

> Plaintiff's cause of action is not based upon an oral contract for the sale of real estate. It is based, instead, upon defendants' violation of his duty, whether imposed by rule of law or by collateral agreement, to permit the auction to be completed by sale to the highest bona fide bidder and to refrain from withdrawing the property before such had been done.

<u>Pillsbury v. McNabb</u>, 37 Pa. D. & C.2d 283, 289, 1965 WL 8189 at *4 (1965).

In the instant matter, similarly, both Debtor/seller and Auctioneer had the duty to complete the sale to the highest bona fide bidder and to refrain from withdrawing the property from sale after the bid due to the nature of the auction being "Absolute." Debtor and Auctioneer breached those duties. In a similar case, the Court "as overseer of the administration of the bankruptcy estate", was troubled by the auction process and the Court ordered the disgorgement of fees paid to the auctioneer. <u>In re Crestview Funeral Home, Inc.</u>, 287 B.R. 832, 837-839 (Bankr. D.N.M. 2002), quoted by <u>In re Stanley</u>, No. 15-70378, 2016 WL 6915522, at *6 (Bankr. W.D. Va. July 29, 2016). In the instant matter, this Honorable Court should be troubled by the auction process and order disgorgement of Debtor's Counsel fees, and/or disgorgement of the fees of the Auctioneer, would be appropriate in the instant matter.

## IV. The Movants Good Faith Purchasers as required by 11 U.S.C. § 363(m), and the sale to Purchasers at the price of their highest bid is in the best interests of the Bankruptcy Estate.

The Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," our

Third Circuit Court in In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143,

147 (3d Cir. 1986) relied on the decision made by the Seventh Circuit, holding

that:

> The requirement that a buyer act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a buyer's good faith status at a judicial sale involves fraud, collusion between the Purchasers and other bidders or the trustee, or an attempt to take a grossly unfair advantage of other bidders.

In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)

(interpreting Bankruptcy Rule 805, the precursor of section 363(m)). Neither the

Debtor nor the Bank have submitted evidence that the Purchasers did not act in

good faith. The Purchasers participated in competitive bidding and won with the

highest bid. The Purchasers did not know any of the other bidders prior to the day

of the Auction, but did collect each of their names and phone numbers after the Auctioneer's attempt to change the nature of the Auction after the fall of the hammer and after the signing of the Sale Agreement. On the contrary, it was the Auctioneer who fraudulently misrepresented[4] the Property and the terms and conditions of the Auction.

A recent Bankruptcy Court decision approved a sale price which was less than the secured claim explaining that:

> The Auction sales price is in the best interest of the estate because, if the Court declines to approve the sale, there is no evidence the Debtor will receive as high of an offer—much less higher—if a second auction is conducted. [The] Bank, as the secured creditor who stands to receive most of the proceeds if the Property is sold, advises it did not intend to submit a significant credit bid.

In re Stanley, No. 15-70378, 2016 WL 6915522, at *8 (Bankr. W.D. Va. July 29, 2016). Similarly, M&T Bank has presented no evidence of a higher bid being offered by any other party, and M&T Bank has presented no evidence that the Debtor will receive as high of an offer as was bid by the Purchasers in the instant action. Finally, because M&T Bank admitted it had prior notice of the Auction and did not attend, this conduct shows M&T Bank did not intend to submit a credit bid like the bank in In re Stanley.

---

[4] A discrepancy between the property described in the advertisement and the property sold at the auction may lead to a claim by the buyer of fraudulent misrepresentations.[8] Hage v. Salkin, 2011 WL 336723 (S.D. Fla. 2011). 7 Am. Jur. 2d Auctions and Auctioneers § 14

## **CONCLUSION**

For the reasons set forth above, the Purchasers respectfully request this Honorable Court to enter an Order (i) approving the sale upon the terms and conditions noted herein; (ii) ordering Attorneys' Fees and expenses incurred by the Purchasers be paid by M&T Bank, Debtor, and/or the Auctioneer; and (iii) grant the Purchasers such other and further relief as the Court deems just and proper.

Respectfully submitted,

**CGA LAW FIRM, P.C.**

/s/ E. Haley Rohrbaugh, Esquire
E. Haley Rohrbaugh, Esquire
Supreme Ct. I.D. No. 323803
Lawrence V. Young, Esquire
Supreme Ct. I.D. No. 21009
135 North George Street
York, PA 17401
(717) 848-4900
*Counsel for Movants/Purchasers*

{01382080/1}21